**Jenny Lasnawati DEWI, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 06–4724.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) March 4, 2008.

Filed April 2, 2008.

Martin A. Kascavage, Schoener & Kascavage, Philadelphia, PA, for Petitioner.

Jonathan Potter, Erica B. Miles, United States Department of Justice Office of Immigration Litigation, Washington, DC, for Respondent.

Before: BARRY, JORDAN, and HARDIMAN, Circuit Judges.

## OPINION OF THE COURT

JORDAN, Circuit Judge.

Jenny Lasnawati Dewi petitions for review of the decision of the Board of Immigration Appeals ("BIA") denying her application for withholding of removal. We will deny the petition.[1]

### I. Background

Because we write only for the parties, we discuss only those facts relevant to the petition for review. Dewi is a native and citizen of Indonesia and ethnically Chinese. She entered the United States in December 1998. She filed an application for

---

1. We have jurisdiction under 8 U.S.C. § 1252(a). "Insofar as the BIA adopted the findings of the IJ, we must review the decision of the IJ. As to matters which the BIA issued its own opinion and did not summarily adopt the findings of the IJ, we must review the decision of the BIA." *Sukwanputra v. Gonzales,* 434 F.3d 627, 631 (3d Cir.2006). The BIA's decision is reviewed for substantial evidence. *Gao v. Ashcroft,* 299 F.3d 266, 272 (3d Cir.2002). This is a deferential standard, and the BIA's determination must be upheld unless "any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* We review questions of our own jurisdiction *de novo. Alaka v. Attorney General,* 456 F.3d 88, 94 n. 8 (3d Cir.2006).

withholding of removal on October 3, 2000. On January 16, 2001, an asylum officer interviewed Dewi in connection with her application and found that she was not entitled to relief.

In an affidavit attached to her application, Dewi describes three incidents which she claims demonstrate that she suffered persecution in Indonesia because of her Chinese ethnicity. First, she claims that, while she was on her way to work, she was often stopped by Muslim men demanding money. Second, she claims that, in 1998, while she and her family were stopped in a car, a group of Muslim men assaulted them with sticks and a machete. According to Dewi's affidavit, the men demanded money from her uncle and grabbed him by the neck. However, her uncle, who was driving the car, succeeded in driving away. She also claims that, sometime in 1998, a Muslim taxi driver took her to a doctor's appointment but refused to accept payment, telling her that "... tomorrow, all Chinese will be killed." (Appendix ("App.") at 87.)

An Immigration Judge ("IJ") held a hearing on Dewi's application on July 19, 2001. At her hearing, Dewi testified that in 1998, while she was traveling to work, a group of three Muslim men stopped her, threatened her with a knife, and took money from her purse. She also testified that some of the men touched her face, her behind, and her breasts. Dewi also testified about the attack on her family while they were in their car. Finally, she testified that after refusing to accept payment, the taxi driver she had described in her affidavit told her that "you don't have to pay me because there will be a party for you and the Chinese." (App. at 118.) Dewi testified that she thought this meant that all of the Chinese would be killed.

The IJ found that the events described in Dewi's affidavit did not entitle her to withholding of removal. He did note that, if she had testified credibly, Dewi's testimony about being sexually touched and about being attacked while driving with her family could, in his opinion, entitle her to relief. The IJ was troubled, however, that Dewi had not described the sexual touching in her affidavit. The government then introduced an assessment prepared by the asylum officer who interviewed Dewi. The assessment recounted that, during her asylum interview, Dewi had claimed that she was threatened while on her way to work, but it did not mention any sexual touching or the attack on Dewi's family in the car. In response, Dewi insisted that she had told the asylum officer that she had been sexually touched. Dewi also testified that she did not tell the asylum officer about the attack while in the car because the asylum officer did not ask about it. The IJ then offered Dewi the option of calling the asylum officer to testify.

On April 12, 2002, a different IJ held a follow-up hearing, and the asylum officer testified. Dewi was present and represented by counsel. The asylum officer testified that, according to her notes, Dewi testified that she was stopped by some Muslims who threatened her with a knife, asked her questions, and threw rocks at her, but she did not mention any sexual touching, and, had such touching been mentioned, it would have been written down. The asylum officer also testified that she did not recall Dewi telling her about any other incidents.

The IJ then found that Dewi was not credible. The IJ noted that two of the three alleged incidents were never mentioned to the asylum officer, and that although Dewi had told the asylum officer that she was accosted by Muslim men on her way to work, she never mentioned any sexual touching.

Dewi filed a timely appeal with the BIA, which affirmed the IJ. The government then filed an unopposed motion with this Court to remand the case to the BIA because the transcript of the asylum officer's testimony was not part of the record of the proceedings. We granted the motion, and the tapes of the asylum officer's testimony were transcribed. Dewi claims, and the government does not dispute, that she was not given a copy of that transcript. On October 30, 2006, the BIA issued a second opinion and affirmed the IJ's negative credibility finding because Dewi's statements to the asylum officer were inconsistent with her hearing testimony. The BIA also affirmed the IJ's finding that, even if Dewi had been credible, she would not be entitled to withholding of removal. Dewi then filed a timely petition for review.

## II. Discussion

In her petition for review, Dewi contends that the BIA violated her due process rights by relying on the transcript of the asylum officer's testimony without providing her with a copy of the transcript. According to Dewi, this prevented her from being meaningfully heard in the administrative appellate process, and it also prevented her from exhausting her administrative remedies. Dewi also argues that she testified credibly, and that her testimony establishes that she is eligible for withholding of removal.[2]

■ We conclude that we lack jurisdiction to address Dewi's due process argument because she failed to raise it before the BIA when she filed her appeal from the IJ's decision. 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right . . . ."); see also Abdulrahman v. Ashcroft, 330 F.3d 587, 594–95 (3d Cir.2003) (holding that we do not have jurisdiction to review arguments not raised before the BIA because they are unexhausted). Dewi never argued in her appeal to the BIA that she should have been given a copy of the transcript. That she could have made this argument before the BIA is evident from the government's recognition in its motion to remand that the transcript was not part of the record before the BIA at the time that it rendered its first decision in her case. Dewi was equally capable of recognizing that the transcript was not present and using her appeal to ask the BIA to address its absence. She did not do so and instead attempts to argue that issue for the first time in her petition to us. We therefore lack jurisdiction to address her argument.[3]

■ Finally, substantial evidence supports the BIA's decision to affirm the IJ's

---

**2.** To qualify for withholding of removal, an applicant must show that she faces a "clear probability of persecution." *Janusiak v. INS*, 947 F.2d 46, 47 (3d Cir.1991) (citing *INS v. Stevic*, 467 U.S. 407, 424, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984)). Persecution consists of "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Li v. Attorney General*, 400 F.3d 157, 167 (3d Cir.2005) (citation and punctuation omitted).

**3.** We recognize that Dewi styles her argument as a due process violation and that due process violations in immigration proceedings are sometimes not subject to exhaustion requirements because the BIA lacks the authority to address claims of constitutional error. *Bonhometre v. Gonzales*, 414 F.3d 442, 448 n. 7 (3d Cir.2005). However, "[a] petitioner cannot obtain review of procedural errors in the administrative process that were not raised before the agency merely by alleging that every such error violates due process. 'Due process' is not a talismanic term which guarantees review in this court of procedural errors correctable by the administrative tribunal." *Marrero v. INS*, 990 F.2d 772, 778 (3d Cir.1993) (citation omitted).

negative credibility finding. Dewi never mentioned the alleged sexual touching or the attack in the car to the asylum officer. In light of this inconsistent testimony, we are not compelled to reverse the BIA's decision.

Accordingly, we will deny the petition for review.